Good morning, and may it please the Court. Mr. Winbush's counsel was constitutionally ineffective for failing to challenge an invalid career offender predicate. The government doesn't contest that. So the only issue is whether, on collateral review, the District Court committed reversible error by relying on a new predicate that was never identified during sentencing. And the answer is yes. The District Court got it wrong for two independent reasons. First, under this Court's decision in United States v. Hodge, a District Court cannot identify a new career offender predicate for the first time on collateral review. And second, the new predicate at issue is not a crime of violence. Ohio third-degree robbery punishes mere snatching, and therefore it falls outside the force clause. Let's begin with Hodge. In Hodge, this Court held that the government has a responsibility to identify all potential ACCA predicates at sentencing itself. If the government fails to identify a predicate at sentencing, it loses the right to rely on that predicate in a later proceeding, such as a habeas proceeding. That is exactly what happened here. Mr. Winbush's Ohio third-degree robbery conviction was not listed as a career offender predicate in the pre-sentence report or identified as a career offender predicate by the District Court or the government during the sentencing proceedings. Therefore, under the rationale of Hodge, the government lost the right to rely on that conviction in a future collateral proceeding, such as this one. The District Court obviously didn't have the benefit of Hodge, and Hodge involved an Armed Does that matter at all in this case? It doesn't matter because the rationale of Hodge did not depend on the fact that the ACCA imposes a statutory minimum. The rationales of Hodge are threefold. First, the Court pointed out the rule of forfeiture, the idea that when the government fails to raise an argument at sentencing, it loses the right to rely on that argument in a future proceeding. There's no reason to treat ACCA predicates differently, and there's no reason to treat career offender predicates differently. Under normal rules, if a defendant fails to challenge a career offender predicate at sentencing, he will lose the right to challenge that predicate in a future collateral proceeding unless there's an excuse for that failure. Indeed, if I'm remembering right, the government made that argument before the District Court, right? The government's view before the District Court was that it could rely on the Ohio third degree robbery conviction, but the defendant had forfeited the right to argue that it didn't qualify as a crime of violence. That's right. It's not clear exactly what the government was arguing with regard to Johnson too, but that is what they were saying about it. So when you say a defendant would forfeit the right to challenge a predicate, but obviously in that scenario, the issue is fairly joined because the government is putting forth the predicate in order to enhance the sentence, and then it makes sense for the defendant to respond to that. But here, the government assumed that it had the sufficient number of predicates in order to enhance the sentence and therefore had little incentive to sort of make the argument as to an additional predicate. Doesn't that, I mean, I understand that Hodge talked about all of that, but doesn't that, isn't that a different situation? As you point out, Rod, Hodge rejected that rationale, but even so, it's useful to think about what would happen if that were not the government's duty at sentencing. The government would be encouraged to remain silent about potential career offender predicates and therefore deprive the defendant of a meaningful opportunity to challenge those predicates and circumvent the normal judicial process. Then this case is a good example of that. In this proceeding, no one identified the Ohio third-degree robbery conviction as a crime of violence during sentencing, and therefore both sides didn't brief the issue. If Mr. Winbush had had effective counsel, then this would have been a full briefing and could have decided the issue on direct review. As it is now, Mr. Winbush had to challenge this new predicate pro se in the district court, and this court has to decide the issue without the benefit of full briefing in the district court. And that is one of the concerns that Hodge raised, that the idea that the government might sandbag the court if it is not required to identify every potential predicate in sentencing proceedings. I'll also point out that Hodge noted that in the context of the ACCA, the government regularly identifies more than the minimum number of predicates under the ACCA that enhance a sentence. There's no reason why the government shouldn't be held to the same responsibility here, and there's no reason why the government cannot do the same here. Counsel, can I ask you a question about relief? If we were to agree with your argument that and so you prevail on your ineffective assistance claim, the remedy would be that it goes back for resentencing with effective counsel, right? There's a resentencing, and this time, counsel has to perform effectively? I think the remedy here would be, first, that the district court cannot rely on the Ohio third-degree robbery conviction. Why is that? Assuming we stop with your Hodge argument, putting to one side your alternative argument, why doesn't it just go back for a sentencing hearing with effective counsel? It doesn't go back because of the rule of forfeiture and the concerns raised by Hodge. The government had a full opportunity to point out this conviction and claim that it was a career offender predicate. Pre-sentence report isn't long. There weren't a ton of convictions. They could have identified this conviction as a career offender predicate. By not doing that, they lost the opportunity in future related proceedings such as a collateral proceeding or resentencing to rely on it. And if the government were held to a different rule, it wouldn't address the concerns that Hodge raised. Hodge pointed out that the government should be required to raise each potential predicate at sentencing so that the court could consider it at sentencing itself and the court would not be sandbagged and that defendants would have a meaningful opportunity to challenge. All of that would be happening. On my scenario, this would be going back for a new sentencing with effective counsel. Everything would be aired. The burden of proof would be on the right party. The government would have to prove up that, you know, the burden would be on the government to prove that Ohio third degree robbery was a crime of violence. Hodge would, I'm sorry, your client would by hypothesis now have effective counsel. He wouldn't be pro se. So it seems like that would actually address most of the concerns in Hodge. Maybe not the forfeiture concern. It wouldn't address the forfeiture concern and it wouldn't be a judicially efficient process. For example, it's what if the defendant were resentenced and for some reason the new predicate that the district court relied on was invalidated in a future proceeding. And again, we have to go through this process of identifying a new predicate and deciding whether it was a proper career offender predicate. The rule of Hodge is that all of these issues should be decided in sentencing. That is the most efficient and fair process for the defendant and the court. Well, that's right. But, and I'll let this go in a minute, but sort of ineffective assistance of counsel is sort of per se an inefficient way to run a judicial system, but it happens. And usually to correct it, we just redo the proceeding this time with effective counsel. That wouldn't be a solution here because of the forfeiture point and the points that I've already discussed. But even if this, the district court were to reconsider this conviction, it should not hold and should not be able to hold that it is a crime of violence under the force clause. Under the Supreme Court's decisions in Johnson 1 and Stokeling, a crime is a crime of violence under the force clause only if it categorically requires violent force. That is force capable of causing physical pain or injury. As the court's recent decision in Stokeling explained, the force required to overcome a victim's resistance is violent under Johnson 1. But as the Sixth Circuit found in United States v. Yates, Ohio third degree robbery does not require such force because it punishes mere snatching, snatching that neither causes physical pain nor injury and does not overcome a victim's resistance. And a few examples illustrate this point. In State v. Pace, a 1981 decision from the Ohio Intermediate Court of Appeals, the court held that merely snatching money out of a third degree robbery. In that case, there was no allegation that the victim resisted or that the victim was injured or caused any physical pain or that the victim even knew that the snatching was about to happen. And yet, that constituted Ohio third degree robbery. State v. Johnson is also similar. In that case, a man asked a woman for directions. And while she was pointing out the directions, he quickly snatched her purse and ran into a getaway car. Once again, that was held to be sufficient force to constitute Ohio third degree robbery. Those two cases show that in order to commit Ohio third degree robbery, you don't need to use violent force or overcome a victim's resistance as the Yates court found in both instances. Finally, I would like to address the point of Mr. Winbush's eligibility for immediate release. Mr. Winbush was incarcerated in October 2010. Under the new guidelines range that is appropriate in this case, he should be sentenced to no more than 92 months in prison at minimum. And that would mean that he would have been eligible for release in June 2018. And we think there's good reason to think that the district court would sentence him at the low end of that range. I'm sorry, counsel. Can you just clarify for me where does the 92-month minimum come from? This is one of my questions. The 92-month minimum comes from Amendment 782. So the district court during the sentencing proceedings noted that if Mr. Winbush were not a career offender, it would sentence him only to eight years in prison rather than 12 and a half years in prison. Therefore, we think that if this went down for resentencing once more, Mr. Winbush would be eligible for immediate release, especially because under the logic of Hodge, the district court would not be able to rely on the Ohio third-degree robbery conviction. And even if it did, it would have to find under the Sixth Circuit's decision in United States v. Yates, as well as the Supreme Court's decisions in Johnson and Stoeckling, that Ohio third-degree robbery is not a crime of violence under the force clause. You know, all of that may be correct, but you're asking this court to issue the mandate in advance of an opinion, which seems a bit odd. Why couldn't we simply just, if we agreed with you, issue the mandate immediately upon the filing of the opinion and that way expedite the case, but not so quickly that we essentially almost dictate to the district court what he or she should be doing? This court issues immediate mandates when time is of the essence, and Mr. Winbush is serving an unlawful sentence. As Judge Winn pointed out in a recent concurrence, this is especially concerning in criminal cases where concurring opinions, dissenting opinions can slow down the judicial process. So the court, of course, has discretion whether or not to issue the mandate immediately, but we would request that it does in this case. Let me just ask you a follow-up question in response to Judge Harris' questions. Hodge was not an ineffective assistance of counsel case. Is that right? That's right. But it should be noted that in the Hodge case, on remand, the district court did not rely on the invalidated conviction, the conviction that the Hodge court said that not relied on. Right. Well, I guess the point is, but the fact that we're dealing with ineffective assistance of counsel, doesn't that suggest, as Judge Harris indicated, that the remedy is to go back down to the district court with competent counsel to hash out all of these issues, including whether or not there was a forfeiture involved by the government? That's an issue that this court can decide. The record on forfeiture is fully developed. And again, the process would slow down and allow the government to sit in silence if it were able to even attempt to redesignate this conviction as a career offender predicate. I'll save the balance of my time for rebuttal. Thank you. Thank you, counsel. Good morning, and may it please the Court. Your Honor, Drew Inman, on behalf of the United States, this Court should affirm district court's denial of the petitioner's 2255 motion. Petitioner claims that his counsel was ineffective for failing to object to a career offender predicate at sentencing. However, he cannot establish prejudice. He cannot establish that his counsel was ineffective, requiring resentencing, because had his counsel objected to that career offender predicate, conveyance of drugs into a correctional facility, the United States would have relied on the alternative Ohio robbery statute, and he would have thus been determined to be a career offender and sentenced exactly the same. Without being able to demonstrate that prejudice, there is no ineffective assistance of counsel. Can I ask you just to square up your argument today with your argument before the district court? Because if I'm reading it right, the government argued before the district court that the petitioner was not allowed to challenge, was not allowed to argue that third-degree robbery under Ohio law did not constitute a crime of violence, because petitioner had not raised that issue at sentencing. But before us, you're arguing that the government is allowed to rely on that third-degree robbery conviction, even though the government didn't raise that at sentencing. So how is that fair? Your Honor, my understanding of the posture of this case is that because petitioner is alleging ineffective assistance of counsel, he has to demonstrate prejudice, and that's his burden. He has to say that if there had been that objection... You argue that he had procedurally defaulted that argument because he didn't raise it at sentencing. So I don't understand why the government didn't forfeit the argument because it didn't raise it at sentencing. It just seems weird to argue that the petitioner should at sentencing have argued that a conviction that nobody was pointing to as a predicate, not the government, not the probation office, not the court, that it was up to the petitioner at that moment to say, here's this conviction. No one's talking about it, but just in case, I want to argue it's not a crime of violence. And that his failure to do that means he can't talk about it anymore on collateral review, whereas the government can say nothing about that conviction, but come in on collateral review and for the first time say, we want you to rely on that. So I'm just asking you to square those two positions. Or maybe you've abandoned the position you took in the district court. Your Honor, my position here today is that the petitioner can argue that Ohio robbery is not... So you are no longer making that that's how you square them. You're giving up the argument you made before the district court. That's correct, Your Honor. The salient point here is that we are in the context of an ineffective assistance of counsel allegation, and so he has to demonstrate prejudice. He can absolutely claim that there would have been no way that he would have been a career offender, irrespective of the, excuse me, he can argue that Ohio robbery does not constitute a career offender predicate. I'm going to take my argument out of order here in response to the petitioner's argument. Hodge is in opposite here. Hodge, as Your Honor pointed out, came not in the context of ineffective assistance of counsel claim. This was a direct collateral review challenge to an unconstitutional sentence. It was unconstitutional because one of the predicates for the Armed Career Criminal Act was invalidated based on Johnson. It was found to violate due process because it was void for vagueness. It was a direct attack on one of his predicate felonies that resulted, Your Honor, in an unconstitutional sentence because the mandatory minimum that resulted under the ACCA was above the statutory max he could have received without that armed career criminal designation. So we have a threefold difference. Number one, this was a statutory challenge. It was based on a statute's sentence, not based on the discretionary guidelines. Number two, it was a mandatory minimum that resulted from that statute. And number three, that mandatory minimum was unlawful because it was above the maximum that petitioner could have received without that armed career criminal designation. Your Honor, it's important to recognize here that the petitioner could not have even brought this challenge on collateral review. He could not bring this challenge on collateral review directly as Hodge did. This court has recognized in the United States v. Foote, the court cannot cure guideline mistakes such as an improper career offender designation. That's not an appropriate venue for a collateral challenge. That's why the petitioner brings this under the context of an ineffective assistance counsel. Counsel, you challenged Strickland by saying that if counsel had raised it, it would have been of no avail because then you would have done something. Correct? And you think that's the standard that we have to speculate all of those things and it has to be a perfect win. Is that the standard for Strickland, that the prong of prejudice? Your Honor, it's the petitioner's burden under the prejudice prong to demonstrate. Ineffective. And you agree with that, don't you? Don't you agree that counsel should have raised it? The United States agrees that the first prong of Strickland was met. All right. But you said the prejudice is not met because we have to opine what you would have done. Maybe you would have slept and done nothing like you did before. District Court asked to the ones you did extra. We don't know, do we? Maybe you didn't think it was a crime of violence because before Stokeling, that was a pretty close question. Or at least it was a close question before Stokeling. Fair point, Your Honor. But the matter of fact is that it's the petitioner's burden to demonstrate. The petitioner is the one asking this court to speculate. No, no, no. We agree that it's the petitioner's burden. But let me, following up on Chief Judge Gregory's question, you know, when we get a case under Strickland where the issue is maybe counsel should have moved to suppress evidence and he didn't. If we find that that suppression motion likely would have been granted and that the evidence that came in was important to the case, that's the end of the matter. We don't go back and say, well, maybe if the lawyer had moved to suppress and the district court had granted it, the government would have gone out and found some new substitute evidence that it could have used. We don't do that extra step. So I guess I'm following up on Judge Gregory's question. Why here would we try to figure out how the government might have tried to fill the hole in its case if the lawyer had been effective? The difference in that case, Your Honor, is we're talking about a, you were talking about a suppression motion. The very nature of sentencing is that if the defense had objected at sentencing to that predicate, the United States has a positive duty to look to see what is the, to maximize the sentence under the guidelines. That United States or assistant United States attorney would have been deficient by not trying to substitute the conveyance statute with the Ohio robbery statute. Moreover, Your Honor, the judge has a requirement, a legal requirement to ensure that the defendant is sentenced accurately under the guidelines. Can I ask you, just in connection with that, why did nobody catch this mistake? I understand that it was really up to defense counsel, but why didn't the government or the judge, the district, I mean, it just seems like this was a really obvious error. And as you say, everybody has a duty to make sure that this gets done right. How did nobody catch this? That's a great question, Your Honor. Okay. Your Honor, on that point, however, the, it may not be ideal, but typically what happens at sentencing is if a defendant does not challenge something, the government won't look forward, look beyond that to ensure that there's backup arguments. The petitioner just argued that the government might be incentivized not to object to career offender predicates because the defendant won't be able to later challenge those. However, I would turn that argument on its head. On the contrary, defendants in this circumstance might be incentivized to not object to false career offender predicates if there are valid career offender predicates that were not named by the government. Because by allowing that ineffective error to proceed, they can then challenge career offender status on collateral review, which under foot they would not be allowed to do. They could not challenge their career offender status, challenge a guidelines error of that nature on collateral review. However, if they don't object at sentencing, suddenly they can, and they can prevent, should your honors rule this way, they can prevent the United States from designating these backup career offender predicates. And that's a dangerous precedent to set. I mean, but Hodge has put you on notice of what it is that you're supposed to do on the front end. So I'm not, I'm not following that argument. You're no longer surprised. You've read Hodge. You know what Hodge requires. So why wouldn't the government in an abundance of caution make the arguments with respect to all of the predicates on the front end? I agree, your honor, that going forward post Hodge, that may be the best policy for the United States. At the time of Winbush's sentencing, Hodge was not there. And as I stated, perhaps this isn't the ideal manner to proceed. But at sentencing, typically, if a defendant does not object, the United States would have no reason to look for backups, given that the defendant at his guidelines will be your honor. I would like to turn now to the issue of whether Ohio robbery constitutes a crime of violence and post Stokeling. It absolutely does. Stokeling proceeded by describing and summarizing the force required at a common law robbery. And it summarized quote, sufficient force must be used to overcome resistance. However, slight that resistance in other words, according to the Supreme Court force that overcomes resistance, however slight will suffice for a crime of violence under the career offender guideline. Stokeling was also explicit that this definition of force comports with Johnson one's opinion that held that the physical force in the elements clause must be violent force force capable of causing physical pain or injury. Stokeling read quote, overcoming a victim's resistance was per se violence against the victim, even if it ultimately caused minimal pain or injury. Stokeling also clarified that just as specified in Johnson, when there's the threat of force, quote, there is no there's not required any particular degree of likelihood or probability that the force will cause physical pain or injury only potentiality. Your honor, I want to address some of those cases that the petitioner raised in particular, he said that pace shows that there is no requirement of overcoming a victim's resistance or there is no requirement of the potentiality for physical pain or injury. On the contrary, in pace, the victim testified in that case. As I was walking to the store, I was carrying my billfold in my left hand and a man came, a person came at me at the time, grabbed it out and I started screaming. And in the meantime, a car came up practically right front side of me and the fellow that took my billfold got into the car. She describes in more detail the theft. He came up to me and he pulled my shoulder strap down. I had my purse and pull and then he pulled my right hand off my left hand where I was holding the bottom part of my purse. That is exactly the kind of force delineated in Stokeling that's sufficient to constitute violent force. In fact, Stokeling gives the example of the robber peeling the victim's fingers, peeling the victim's fingers off the object stolen and they said that is sufficient. Pace clearly meets that threshold under Stokeling. Your Honor, there's another example in Stokeling demonstrating violent force and it's when, quote, the robber, quote, runs against another for the purpose of diverting his attention and robbing him. So again, the cases where the elderly victim was bumped to distract their attention and their purse was robbed, that too qualifies under Stokeling. So you're saying pickpocketing qualifies too under robbery under that statute, right? No, Your Honor. Most pickpocketing is distracted by touching the victim. Matter of fact, if you go into the one breast pocket, you normally touch another part of the body as you go in. Your Honor, in the case where the robber... Is that right? Pickpocketing is not you just cleanly take something. You normally distract by touching. You're going right, you touch left. I mean, so that's enough force? Because that's what you were saying basically because he bumped for distraction and took it. So pickpocketing would be also correct. Your Honor, I disagree. Tell me what you disagree with about the pickpocket. You think I'm wrong about that's how pickpocketing is normally accomplished, but it's what you distract by touching another part of the body? Your Honor, in practical reality, a pickpocketer is generally going to make some contact with the victim's purse. Absolutely. That's my question. Is that enough? You said distraction was enough. That's distraction touching. Your Honor, I'm relying on you to answer my question. Your Honor, I would say that Stoeckling is met if that so-called pickpocketer bumps the victim sufficient to distract their attention and steal the property. And that is what Stoeckling says is enough. It's amazing how we just sort of take common law crimes and just distort them beyond recognition in order to shoehorn them into predicates in a federal sentencing scheme. States have no interest in narrowing what they prosecute. They're broad. But then we come here and we'd say, no, it fits here. It has no recognition with what robbery is. Robbery is for, it's not somebody walks by you and just snatches a dollar bill out of your hand and keep going. Because they touch you, you said peel against your fingers. That's enough for robbery? Is that sort of strange? Your Honor, if it had been just the slightest touching of pulling the strap off of the elderly victim, I suspect that would not qualify. But you're not a victim too, right? You say elderly as if that would make a difference. Your Honor, the Ohio courts have found the vulnerabilities of the victim to factor in that potentiality for force or harm to them. So that is a salient fact in those cases. So the crime change is based on the age and the muscular or non-muscular. Is that an element of the offense? What changes is the potential for harm to that victim in effectuating the robbery. So their vulnerability, their age, whether they're elderly or a young child, absolutely should be a factor considered. And whether the Ohio robbery statute is met. And that's why the Ohio appellate courts factored into whether that was a particularly frail or vulnerable victim. But ultimately, the courts all still required that there was that potential for harm in overcoming that victim's resistance and involuntarily stealing from them. I'm sorry, just to go back to the touch to distract during a pickpocketing. You say that Stoeckling says that's enough, just a touch to distract? Because I thought that Stoeckling and you have probably read it more recently than I have. I thought it turned on this notion of victim resistance. But even if there's no resistance, the touch combined with the pickpocketing is enough under Stoeckling? Your Honor, I am quoting Stoeckling giving examples of what they say demonstrates a victim's resistance being overcome. They give the example of the fingers being peeled off, which I think is more than a touch in the Stoeckling court. That seems very different than just a touch and then a pickpocketing. Right. The language I next quoted was they actually said, quote, run against another. And I think that connotes more than a touch of just a pickpocketer. I think that connotes some sort of force actually bumping somebody. Right. I do too. But I guess, I'm sorry, I'm confused. I thought it was your point, not mine, that under Stoeckling, a touch and a pickpocket would be enough. That is not your point. Absolutely not, Your Honor. I think the Ohio appellate cases and Stoeckling are connoting much more than a tiny touch. And forgive me, Your Honor, if I did not make that clear in trying to distinguish it. Your Honor, Ohio case law. I thought it was that someone hit that bill fold and they took it out of their hand. Your Honor, in fact, there's an Ohio appellate case where it was not robbery, where the robber wrested money from the victim's hand. And in fact, that case specifically noted that the victim clamped down hard upon that money. And still the wresting of the money from their hand was not sufficient. And I'd like to point out there is a contrary case. The facts are very light. It does not describe a struggle between the victim and the robber. But wresting money from the victim's hand constituted robbery. That was an unpublished, non-precedential opinion. And that's why in my 28J letter to this court, I noted that there is an Ohio Supreme Court case where in the syllabus of the case, and an Ohio case law, an Ohio Supreme Court case's syllabus is the law, is the law. And contrary appellate precedent that contradicts the syllabus point is void. That case, State v. Davis, says that Ohio robbery statute's requirement of the use or threat of use of force against another is satisfied if the fear of the alleged victim is likely to induce a person to part with property against his will and suspend his power to exercise his will by virtue of the terror impressed. In other words, the force has to create, or the threat of the force has to be such to suspend their will by the terror impressed. And that's an indication of what kind of force is being threatened. Your Honor, the Ohio cases are absolutely legion, showing force in line with Stoeckling that force used to dispossess the victim is enough to constitute crime of violence. Just before I let you move on from this, I can't find the name of the case, but the bumping case, the case where the victim is bumped and then to distract, and then something is taken, that's the one that I'm sort of stuck on. So your argument on that is that a bump is more than a touch? Your Honor, I would say in that case, the victim was run up against, as described in Stoeckling, to distract them, to rob from them. And in particular, this was a case of an elderly victim who was particularly vulnerable to that running up against. And so there was that potentiality for harm, as Johnson describes. Through the bump. Okay. Yes, Your Honor. I see that my time is up. Thank you, Your Honor. All right. Thank you. Just a few points, Your Honor. The attempt to distinguish Hodge is non-meaningful for several reasons. First, the reasoning of Hodge did not rely on the idea that it imposes a statutory minimum. An unlawful sentence is an unlawful sentence, whether under the guidelines or the ACCA. That is why this court routinely reverses miscalculations of guidelines as abuses of discretion. Second, the Council for the United States argued that a judge has an obligation to accurately calculate the correct sentence. We agree with that. And that is true under the ACCA. And that is true under the sentencing guidelines. So again, that underscores the point that there is no meaningful distinction between the circumstances of this case and the Hodge case. Third, the government's attempts to argue why Ohio third-degree robbery qualifies under Stokeling are unpersuasive. As the slip opinion in that case states on page 7, purse snatching is something less than what is required under traditional robbery, robbery that requires resistance. On page 12, Justice Thomas gives an example of money snatching not being a crime under Florida robbery, but money snatching where the offender has to peel fingers back being a crime. And that is why it was a crime of violence. But under the Ohio Intermediate Appellate Court's decision in State v. Grant, the citation for which is 1981 WL4576, that case holds that merely bumping into someone and pickpocketing is a crime of violence. And as we discussed earlier in State v. Grant, simply snatching money out of someone's hand without even a bump constitutes a crime of violence. The government's attempts to point to other cases are not meaningful because no matter what other some cases say about the force required, it does not obviate the decisions in State v. Johnson, State v. Grant, and State v. Pace. It's the minimum conduct that would constitute the crime and the categorical approach. That's absolutely right, Chief Judge Gregory. Those cases show that the minimum conduct required, the minimum force required, is not force that overcomes resistance. Finally, the government's reliance on Davis is misplaced. Davis addresses the element of the threat of force, not actual force used. And an alternative means offense, like Ohio third degree robbery, both means need to meet the definition of violent force. Even if one means, the use of the force, then the crime is categorically not a crime of violence. And it should be noted that several of the cases that we cited post-State Davis. Thank you. Thank you. Senator Voss, I've noted that you're a court opponent. I just want to make sure that we give you special recognition for that. We appreciate your work. We couldn't do our work without counsel like yourself taking on these cases and we appreciate that. As well as Mr. Inman, thank you for ably representing the United States. We'll come down, greet counsel, and proceed to our next case.
judges: Roger L. Gregory, Albert Diaz, Pamela A. Harris